## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

KATHLEEN KANE,

      Plaintiff,

v.                                 Case No: 8:21-cv-1050-CEH-TGW

SELECT MEDICAL
CORPORATION, SELECT
PHYSICAL THERAPY HOLDINGS,
INC. and SELECT EMPLOYMENT
SERVICES, INC.,

      Defendants.

_____/

## <u>O R D E R</u>

This matter comes before the Court on Defendants' Motion to Dismiss Relator's Second Amended Complaint (Doc. 69). In the motion, Defendants request dismissal of the Second Amended Complaint with prejudice because it is a shotgun pleading and fails to allege Plaintiff/Relator's False Claims Act claims with particularity as required by Rule 9(b). Plaintiff/Relator Kathleen Kane filed a response in opposition (Doc. 78), and Defendants replied (Doc. 88). Additionally, Defendants filed a Notice of Supplemental Authority[1] (Doc. 70), as did Kane (Doc. 94). The Court,

---

[1] Defendants' Notice of Supplemental Authority (Doc. 70) seeks to add a new basis for dismissal that was not raised in the Defendants' motion to dismiss. Defendants cite *United States ex rel. Zafirov v. Fla. Med. Assocs., LLC, et al.*, 751 F. Supp. 3d 1293 (M.D. Fla. Sept. 30, 2024), in which another judge in this District granted a defense motion for judgment on the pleadings and dismissed an FCA case after concluding that the FCA's *qui tam* provision is unconstitutional. A constitutional challenge was not raised in the instant motion and thus is not properly before the Court. But even if the Court were inclined to consider the issue, the argument would be rejected. *Zafirov* is currently on appeal, the Eleventh Circuit has not

having considered the motion and being fully advised in the premises, will grant Defendants' Motion to Dismiss Relator's Second Amended Complaint and allow Relator one final opportunity to amend.

## I.    BACKGROUND[2]

This is a False Claims Act or "*qui tam*" action. The False Claims Act allows a private party, referred to as a "relator," to file an action on behalf of herself and the United States against entities that have defrauded the government and to share in any recovery if an action is successful. 31 U.S.C. §§ 3730(b), (d). In this action, Plaintiff/Relator Kathleen Kane ("Relator" or "Kane") sues Defendants, Select Medical Corporation ("SMC"), Select Physical Therapy Holdings, Inc. ("SPTH"), and Select Employment Services, Inc. ("SES"), (collectively "Defendants"), for alleged fraudulent timekeeping and billing practices in violation of the False Claims Act, 31 U.S.C. §§ 3729–33 ("FCA"). Doc. 62. In a two-count Second Amended Complaint, Relator alleges Defendants presented false claims to the United States for payment or approval in violation of 31 U.S.C. §§ 3729(a)(1)(A), 3729(a)(1)(C), and 3729(a)(1)(G) (Count I) and conspired to violate the FCA in violation of § 3729(a)(1)(C) (Count II). *Id.* The United States has declined to intervene. Doc. 26.

---

decided the issue, and "the overwhelming weight of the law is to the contrary at this time." *United States ex rel. Publix Litig. P'ship, LLP v. Publix Super Markets, Inc.*, No. 8:22-CV-2361-TPB-AAS, 2025 WL 1381993, at *3 (M.D. Fla. May 13, 2025) (Barber, J.) (collecting cases).
[2] The following statement of facts is derived from the Second Amended Complaint (Doc. 62), the allegations of which the Court must accept as true in ruling on the instant Motion to Dismiss. *Linder v. Portocarrero*, 963 F.2d 332, 334 (11th Cir. 1992); *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp. S.A.*, 711 F.2d 989, 994 (11th Cir. 1983).

Relator is a licensed physical therapist and certified athletic trainer with over thirty years of professional experience. *Id.* ¶ 2. She was employed by Defendant SES from July 28, 2014, until she resigned on September 3, 2020. *Id.* During her employment, Relator worked at various Select Physical Therapy locations that are subsidiaries and/or affiliates of SMC. *Id.* From August 2015 until September 2020, she worked at Select Physical Therapy's Carrollwood clinic, located in Tampa, Florida. *Id.*

Defendants are Delaware corporations who share common ownership, financial control, headquarters location, management, and operational control. *Id.* ¶¶ 4–8. Relator alleges that SMC, SPTH, and SES operate with a sufficient degree of unity in the management of the Select Physical Therapy facilities in the Tampa area to present themselves as a single company to third parties. *Id.* ¶ 9. Defendants operated as a single or integrated employer. *Id.* ¶ 10. Alternatively, Defendants operated as a joint employer or shared agency relationship. *Id.* ¶¶ 11, 12.

Relator alleges that from 2016 to the present, Defendants knowingly submitted false or fraudulent claims for Medicare reimbursement for physical therapy services provided to individuals who are beneficiaries of Medicare and other federally funded payors ("FFP"). *Id.* ¶ 41. Defendants' unlawful practices included fraudulently upcoding for direct (one-on-one) therapy when group therapy was provided or overbilling for direct therapy and fraudulently billing for "unskilled" physical therapy services not eligible for reimbursement. *Id.* Relator alleges that Defendants engaged in a scheme of "upcoding" by routinely submitting false claims for reimbursement to

3

Medicare and other FFPs for direct physical therapy services when only group therapy was provided. *Id.* ¶¶ 50, 51. Defendants would schedule physical therapists to provide services to multiple patients at the same time and then falsely bill the services under CPT codes that indicated one-on-one therapy, causing Medicare and other FFPs to over-pay for direct services that had not actually been provided. *Id.* ¶¶ 52, 53, 54.

Rita Booth, Director of Defendants' Carrollwood clinic, routinely scheduled patients with overlapping time slots and on numerous occasions billed for direct therapy instead of group therapy even though multiple patients were treated at the same time. *Id.* ¶¶ 55, 56. Relator purports to show examples of the improper billing practices by citing to dates of treatment on September 19, 2018 and November 19, 2018, in which multiple patients each day had overlapping appointment times and were provided simultaneous treatment although it was overbilled as one-on-one direct therapy. *Id.* ¶ 58. CMS guidelines on Medicare for physical therapy services preclude a therapist from billing any two CPT codes for therapeutic procedures requiring direct one-on-one patient contact for outpatient therapy services provided to the same or different patients during the same 15-minute (or other) time period. *Id.* ¶ 59. Relator alleges that the improper billing was not a result of sloppy paperwork, but instead was a systematic and ongoing fraudulent billing scheme. *Id.* ¶ 60.

Physical therapist Amy Shehadeh, an employee of Select Physical Therapy's Carrollwood facility, overbilled for direct services while treating two patients simultaneously. *Id.* ¶ 61. Relator provides examples from November 8, 2019 and August 18, 2020. *Id.* Employee Cameron Moore, who worked at the Northdale and

4

other clinics, also overbilled for direct services when treating two patients at the same time. *Id.* ¶ 62. Relator provides examples of upcoding by Moore from simultaneous treatment of multiple patients on June 24 and 25, 2020. *Id.* Relator states she has dozens more examples of the overbilling, evidencing that Defendants systematically submitted false claims to Medicare in which they sought reimbursement for more direct physical therapy services than were provided under Medicare reimbursement rules. *Id.* ¶¶ 64, 66.

Medicare only covers "skilled" physical therapy services, that is, services that are reasonable and medically necessary and performed or supervised by a qualified physical therapist. *Id.* ¶ 68. Defendants routinely billed Medicare for unskilled physical therapy services ineligible for reimbursement or for services outside the patient's plan of care. *Id.* ¶ 71. Ms. Booth performed rehabilitative therapy on an FFP patient 139 times over the course of 20 months. *Id.* ¶ 73. Several of Defendants' professionals performed rehabilitative therapy on a 94-year-old FFP patient 161 times over the course of 21 months. *Id.* ¶ 74. Relator alleges that the continued treatment for these patients was not justified. *Id.* ¶ 75.

Billing services as "direct" rather than "group" results in substantially higher federal reimbursements for Defendants. *Id.* ¶¶ 78, 80. Internal emails reflect employees were directed to avoid "group" billing. *Id.* ¶¶ 80, 81, 82. Defendants incentivized employees to upcode by paying bonuses for productivity. *Id.* ¶ 79.

On November 16, 2018, Relator informed Defendants' chief compliance officer, Robert Breighner, Jr., about Booth's fraudulent billing practices. *Id.* ¶ 90. In March 2019, Relator brought Ms. Booth's fraudulent billing practices to the attention of Select Physical Therapy's Market Manager, Mr. Rudy Maduro, and on March 31, 2019, she further reported that Booth had billed for treatment that was not actually performed. *Id.* ¶¶ 93, 94. Rather than have Booth correct the billing entry, Relator was told to stop auditing files for which she was not the treating clinician. *Id.* ¶ 95. When Relator confronted Booth about her activity, Booth responded that this was the way she was taught to bill and that she "did not believe in group billing." *Id.* ¶ 98.

Relator alleges that representations made in a Medicare Provider application and Agreement as well as Medicare cost reports are sufficient to ground a claim for an FCA violation. *Id.* ¶ 104. Defendants submitted Medicare cost reports that were based on their claims to Medicare. *Id.* ¶ 105. Relator alleges that Defendants' submission of Medicare cost reports that contained false certifications or incorrect data or information constituted false statements to obtain payments from the Government in violation of the FCA. *Id.* ¶¶ 106–109. As a result of Defendants' actions, the Government Payors have been damaged. *Id.* ¶ 113.

## II.    LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). Labels,

conclusions and formulaic recitations of the elements of a cause of action are insufficient. *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Furthermore, mere naked assertions are not enough. *Id.* A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The court, however, is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint. *Id.*

Additionally, Federal Rule of Civil Procedure 9(b) places more stringent pleading requirements on claims alleging fraud. Fed. R. Civ. P. 9(b). "[U]nder Rule 9(b) allegations of fraud must include facts as to time, place, and substance of the defendant's alleged fraud." *United States ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1308 (11th Cir. 2002) (citation and internal quotations omitted). Plaintiffs are thereby required to set forth "the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them." *Hopper v. Solvay Pharm., Inc.*, 588 F.3d 1318, 1324 (11th Cir. 2009) (internal quotation marks omitted) (citing *Clausen*, 290 F.3d at 1310). Failure to satisfy the particularity requirement under Rule 9(b) amounts to failure to state a claim under Rule 12(b)(6). *See, e.g., Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1012 (11th Cir. 2005).

## III.    DISCUSSION

### A. Shotgun Pleading

Defendants' first argument to dismiss is a procedural one. They argue that the Second Amended Complaint improperly lumps together all Defendants without specifying the act or omission attributable to each to give rise to liability. Because Relator attributes all allegations to all Defendants, without delineating among them, Defendants argue the Second Amended Complaint is a shotgun pleading subject to dismissal.

"Shotgun pleadings" refer to complaints that violate either Rule 8(a)(2) or Rule 10(b) of the Federal Rules of Civil Procedure. *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015). "The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323. The Eleventh Circuit has identified four general types of shotgun pleadings.[3] *Id.* at 1322–23. Relevant here, Defendants argue

---

[3] The Eleventh Circuit has identified the following four general types of shotgun pleadings:

> (1) "a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint"; (2) "a complaint ... replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action"; (3) a complaint "that commits the sin of not separating into a different count each cause of action or claim for relief"; and (4) a complaint that "assert[s] multiple claims against multiple defendants without specifying which of the defendants are

the Second Amended Complaint is deficient as a shotgun pleading because it asserts claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions. *See id.* at 1323.

Relator responds that she has properly alleged Defendants are related entities with shared ownership, employees, and control, such that there is a factual basis for joint attribution of liability. The Eleventh Circuit's application of the National Labor Relations Board test in considering whether corporate entities should be considered as a single/integrated enterprise is instructive. *See Lyes v. City of Riviera Beach, Fla.*, 166 F.3d 1332, 1341 (11th Cir. 1999) (citations omitted).  That test sets out four criteria to determine whether the entities are "highly integrated with respect to ownership and operations." *McKenzie v. Davenport-Harris Funeral Home*, 834 F.2d 930, 933 (11th Cir. 1987) (citation omitted).  The criteria are: (1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control. *Id.* Here, Relator has alleged that all three Defendants operate as a single company, sharing ownership, control, headquarters, and management. *See* Doc. 62 ¶¶ 7–12. Additionally, this Court has previously recognized that complaints attributing the same actions to multiple defendants whom it alleges operate jointly have been found to provide fair notice to defendants for shotgun pleading purposes.

---

responsible for which acts or omissions, or which of the defendants the claim is brought against."

*Burke v. Custom Marine Grp.*, 847 F. App'x 578, 580–81 (11th Cir. 2021) (citing *Weiland*, 792 F.3d at 1321-23).

*See Norris v. Honeywell Int'l, Inc.*, No. 8:22-CV-1675-CEH-TGW, 2023 WL 6256183, at *4 (M.D. Fla. Sept. 26, 2023) (finding allegations of joint employment relationship were sufficient to overcome shotgun pleading challenge even though complaint's allegations did not attribute specific facts to each defendant). Accepting the allegations of the Second Amended Complaint as true, as the Court must do on the instant motion, Relator's allegations adequately allege a theory of collective liability for the purpose of providing Defendants with notice.

While Defendants' motion is due to be denied on this ground, the Second Amended Complaint nevertheless suffers from shotgun pleading deficiencies for another reason. In Count I, Relator asserts claims for violations of three different provisions of the FCA—§ 3729(a)(1)(A); § 3729(a)(1)(B), and § 3729(a)(1)(G)—all of which require Relator to plead different elements.[4] As such, the Second Amended Complaint commits the shotgun pleading pitfall of failing to separate into different counts each cause of action or claim for relief. *See Weiland*, 791 F.3d at 1323.

---

[4] The elements of causes of action under § 3729(a)(1)(A) and § 3729(a)(1)(B) are discussed in the sections that follow. To establish a false claim cause of action pursuant to 31 U.S.C. § 3729(a)(1)(G), known as a reverse false claim, "a relator must prove: (1) a false record or statement; (2) the defendant's knowledge of the falsity; (3) that the defendant made, used, or causes to be made or used a false statement or record; (4) for the purpose to conceal, avoid, or decrease an obligation to pay money to the government; and (5) the materiality of the misrepresentation." *U.S. ex rel. Matheny v. Medco Health Sols., Inc.*, 671 F.3d 1217, 1222 (11th Cir. 2012) (citing 31 U.S.C. § 3729(a)(7); *United States v. Bourseau*, 531 F.3d 1159, 1164–70 (9th Cir. 2008)). "This is known as the 'reverse false claim' provision of the FCA because liability results from avoiding the payment of money due to the government, as opposed to submitting to the government a false claim." *Medco Health Sols.*, 671 F.3d at 1222 (citation omitted). Defendants' motion does not specifically challenge the claim under § 3729(a)(1)(G), but to the extent Relator seeks to bring a reverse false claim, she must allege it in a separate count.

10

Accordingly, the Second Amended Complaint is due to be dismissed as a shotgun pleading.

### B. Particularity Requirement under Rule 9(b)

To state a claim in an action under the False Claims Act, Rule 8's pleading standard is supplemented but not supplanted by Federal Rule of Civil Procedure 9(b). *See Clausen*, 290 F.3d at 1309. In pertinent part, Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud," but scienter may be alleged generally. To satisfy this heightened-pleading standard in an FCA action, the Relator must allege "facts as to time, place, and substance of the defendant's alleged fraud," particularly, "the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them." *Id.* at 1310 (quoting *Cooper v. Blue Cross & Blue Shield of Fla.*, 19 F.3d 562, 567–68 (11th Cir. 1994)) (internal quotation marks omitted).

In their motion to dismiss, Defendants argue that the Second Amended Complaint fails to satisfy Rule 9(b)'s requirement of pleading the who, what, where, when, and how. First, Defendants claim that Relator fails to identify any single claim presented to the government for reimbursement, which is the *sine qua non* of a presentment claim. To state a § 3729(a)(1)(A) presentment claim in this Circuit, "a complaint must allege (1) a false claim, (2) that the defendant presented, or caused to be presented, for payment or approval, (3) with knowledge that the claim was false." *United States ex rel. 84Partners, LLC v. Nuflo, Inc.*, 79 F.4th 1353, 1359 (11th Cir. 2023)

(citing *United States ex rel. Phalp v. Lincare Holdings, Inc.*, 857 F.3d 1148, 1154 (11th Cir. 2017)).

Defendants acknowledge Relator's general allegations that Defendants "routinely submitted false claims for reimbursement" for direct therapy services when group therapy was provided, but they argue that she fails to plead with particularity that any one claim was actually presented to the government for reimbursement. Instead, Relator relies upon her own summaries of the therapy treatments allegedly provided by three clinicians and the CPT codes recorded in patient treatment notes. The patient notes she attaches do not contain any billing entries to identify the charged amount, payment amount, date of claim submission, or date of payment. Nor do Relator's allegations reflect she has personal knowledge of any such information or that her responsibilities included billing. Defendants argue that Relator's summaries of medical records and treatments are not a substitute for specific allegations about the presentment of a claim for payment.

In response, Relator submits that the Eleventh Circuit has moved away from *Clausen*'s exacting requirements for presentment arguing there is no *per se* rule that an FCA complaint must provide exact billing data or attach a representative claim. Doc. 78 at 10 (citing *U.S. ex rel. Mastej v. Health Mgmt. Assocs., Inc.*, 591 F. App'x 693, 704 (11th Cir. 2014)). Relator is correct that attaching a copy of a bill is not always required. *84Partners,* 79 F.4th at 1361 (holding that relator must nevertheless show some of the information for at least some of the claims). But as the *Mastej* court reiterates from *Clausen*, there must be "some indicia of reliability . . . in the complaint

to support the allegation of an actual false claim for payment being made to the Government." *Mastej*, 591 F. App'x at 704 (citing *Clausen*, 290 F.3d at 1311). And a detailed description of a widespread fraudulent scheme—unaccompanied by particularized allegations of actual presentment of false claims—still fails. *84Partners*, 79 F.4th at 1361.

Rule 9(b) "does not permit a False Claims Act plaintiff merely to describe a private scheme in detail but then to allege simply and without any stated reason for his belief that claims requesting illegal payments must have been submitted, were likely submitted or should have been submitted to the Government." *Clausen*, 290 F.3d at 1311. Whether a complaint sufficiently alleges indicia of reliability to satisfy Rule 9(b) is considered on a case-by-case basis. It is not enough to allege "with particularity the circumstances comprising the elements of the alleged scheme to defraud." *United States ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1358 (11th Cir. 2006). Relator must allege facts related to the actual presentment of claims for payment to the government. Where no amounts of charges were identified, no actual dates were alleged, no policies about billing were described, and not one copy of a single bill or payment was provided, the *Atkins* court found relator failed to meet the minimum pleading requirements for the presentment of a claim. *Id.* at 1358 (citing *Clausen*, 290 F. 3d at 1312). Similarly, no evidence of actual charges or billing is included in the Second Amended Complaint. Relator references that she provided to Defendants' VP of compliance 120 examples of fraudulent bills submitted to the government, *see* Doc. 62 ¶ 92, but no such submitted bills have been provided for the Court's consideration. And although her response to

the motion to dismiss seeks to explain why the medical records attached (Exhibit C)
should be considered billing records, the Second Amended Complaint fails to allege
that next step from the patient notes to the actual presentment of charges to the
government.

"The [FCA] does not create liability merely for a health care provider's
disregard of Government regulations or improper internal policies unless, as a result
of such acts, the provider knowingly asks the Government to pay amounts it does not
owe." *Clausen*, 290 F.3d at 1309 Thus, the primary inquiry regarding whether a
relator's allegations state a claim under this subsection is, did the defendant present (or
caused to be presented) to the government a false or fraudulent claim for payment?
*Hopper*, 588 F.3d at 1326.

Here, Relator relies on summaries she has created with CPT codes from
treatment records and dates of treatment by Defendants' professionals, but she does
not allege that next step to identify any actual claims presented to the government for
payment. While Relator generally alleges "Defendants would then fraudulently bill
the services provide to these patients under CPT codes that indicated that a physical
therapist provided direct therapy," Doc. 78 at 17 ¶ 5, such broad allegations fall short
of pleading with the particularity required by Rule 9(b). Likewise, in citing to the
treatment notes, Relator blanketly alleges that Defendants overbilled Medicare. Doc.
62 at 22–24.

Relator was one of the physical therapists employed by SES. She did not work
in the billing department; she does not allege she had access to the computer billing

systems; and she does not allege she had first-hand knowledge that Defendants submitted specific false claims. In her response, Relator states she had access to Defendants' record systems, Doc. 78 at 12, but it is not clear this means their billing system, as opposed to patient treatment records. The only documents she attaches to the complaint are treatment notes. *See* Doc. 4. The response also states that "she observed, recorded, and reported how her fellow physical therapists submitted claims," Doc. 78 at 12, but the Second Amended Complaint does not allege Relator observed the actual submission of false claims to the government. But even if it did, she would nevertheless need to further allege with particularity the claims submitted— the amounts charged, who submitted the claims, the dates of the submissions or other indicia of reliability that shows fraudulent claims were actually presented for payment. The Second Amended Complaint lacks these specific details. For this reason, the presentment claim under § 3729(a)(1)(A) fails.

Next, Defendants argue that Relator failed to adequately plead the requisite scienter for liability under the FCA. Regarding scienter, a relator must allege that the defendant acted "knowingly," which the FCA defines as either "actual knowledge," "deliberate ignorance," or "reckless disregard." 31 U.S.C. § 3729(b). Defendants contend that the emails incentivizing employees to upcode in the name of productivity is insufficient to establish the link between the emails and the submission of a false claim to the government. Additionally, Defendants claim that Relator's allegations of the scope of an internal review that resulted in certain billing corrections is insufficient to plead evidence of scienter to satisfy Rule 9(b).

15

Although proof of scienter is necessary for ultimate liability, Federal Rule of
Civil Procedure 9(b) allows a plaintiff to allege "[m]alice, intent, knowledge, and other
conditions of a person's mind . . . generally." Given this standard, Relator's complaints
to management about improper billing are sufficient to establish that Defendants acted
knowingly, or at least with deliberate disregard, if Relator can adequately allege facts
as to the presentment of the false claims to the government.

## C. False Record or Statement

In Count One, Relator also seeks to hold Defendants liable for violating §
3729(a)(1)(B). To properly state a claim under this section, a relator must show that
"(1) the defendant made (or caused to be made) a false statement, (2) the defendant
knew it to be false, and (3) the statement was material to a false claim." *Lincare
Holdings, Inc.*, 857 F.3d at 1154 (citing 31 U.S.C. § 3729(a)(1)(B)). Relator alleges
Defendants violated § 3729(a)(1)(B) by knowingly, or with reckless regard for the
truth, made, used or caused to be made or used, false records or statements that were
material to false or fraudulent claims for payment or approval by the United States.
Doc. 62 ¶ 118. Relator further alleges the false records or statements were material to
Defendants' claims for Medicare payment because Medicare would not have paid the
claims absent the records or statements. *Id.* ¶ 119.

Defendants argue the § 3729(a)(1)(B) claim should be dismissed because Relator
fails to identify with the requisite particularity a single false claim and therefore, she
cannot demonstrate that any alleged false statement was material to an unidentified
claim. Relator responds that this is simply a rehashing of Defendants' lack of

16

presentment argument. The Eleventh Circuit recently clarified in *Olhausen v. Arriva Medical, LLC*, 124 F.4th 851 (11th Cir. 2024), that a claim under § 3729(a)(1)(B) requires "allegations that a specific fraudulent claim was in fact submitted to the government." *Id.* at 864 (quoting *Lincare Holdings, Inc.*, 857 F.3d at 1154). In *Olhausen*, the Eleventh Circuit noted that its recent opinion in *84Partners* similarly required a relator alleging a Section 3729(a)(1)(B) claim to plead presentment with particularity. *Olhausen*, 124 F.4th at 864; *see also 84Partners*, 79 F.4th at 1360. Thus, for the same reasons discussed above that Relator's § 3729(a)(1)(A) claim is inadequately pleaded, Relator's claim under § 3729(a)(1)(B) fails. Additionally, as discussed above, these are separate causes of action that should have been pleaded in separate counts. Relator will be permitted to amend her complaint. To the extent Relator chooses to amend, she must plead separate claims in separate counts.

### D. Claims Related to Payments Submitted to Commercial Insurers

In their motion, Defendants seek dismissal of any claims by Relator arising out of payments to commercial insurers, worker's compensation payors, or Medicare Advantage organizations (MAOs) because such payments are not governed by the FCA. Defendants argue that the Second Amended Complaint's claims predicated on payments to private health insurers are subject to dismissal unless Defendants caused the government to make improper payments to the non-government insurers, which Relator fails to allege.

In response, Relator maintains that her Second Amended Complaint is not seeking to hold Defendants liable for defrauding non-Medicare insurers. The purpose

of referencing patients in other programs was simply to demonstrate that Defendants were charging for direct therapy when group therapy was being provided. The motion to dismiss on this issue is due to be denied because Relator is not pursuing her claims based upon payments to non-governmental health insurers.

### E. Claim Based on Unskilled Services Theory

Defendants move to dismiss the Second Amended Complaint's claim that they violated the FCA by fraudulently billing for physical therapy services that were not eligible for reimbursement (the "unskilled services" theory) in violation of 31 U.S.C. §§ 3729(a)(1)(A)-(B). Defendants argue that Relator's claim is based on conclusory allegations regarding two patients without any claims information, medical records, analysis of records, or information regarding the patients' health. Defendants argue that Rule 9(b) demands more and Relator's conclusory subjective opinion is insufficient to trigger FCA liability.

Relator responds that she has adequately pleaded her theory by detailing that Booth and other therapists performed unnecessary and repetitive therapy on two patients. She argues that it is absurd to expect this for-profit business to not have billed for all this unnecessary treatment. But the Eleventh Circuit has repeatedly stated that it is not enough for a plaintiff relator to assert that claims requesting illegal payments must have been submitted or were likely submitted or should have been submitted. *See 84Partners*, 79 F.4th at 1360–61 (citing *Clausen*, 290 F.3d at 1311). There must be sufficient factual allegations to support that an *actual* false claim for payment was

submitted to the government for payment. As discussed above, Relator's allegations on this issue fall short.

### F. Conspiracy Claim – Count Two

A person who "conspires to defraud the Government by getting a false or fraudulent claim allowed or paid" is subject to FCA liability. 31 U.S.C. § 3729(a)(1)(C). Defendants move to dismiss the conspiracy claim in Count Two for failing to state a claim. Although the FCA does not define the elements of conspiracy, courts recognize that "general civil conspiracy principles apply." *U.S. ex rel. Durcholz v. FKW Inc.*, 189 F.3d 542, 545 n. 3 (7th Cir. 1999) (citing *U.S. v. Murphy*, 937 F.2d 1032, 1039 (6th Cir. 1991)); *see also Corsello*, 428 F.3d at 1014. Thus, a Relator pleading a claim for FCA conspiracy must allege (1) that "an agreement existed to have false or fraudulent claims allowed or paid" to the government, (2) that each alleged member of the conspiracy "joined that agreement," and (3) that "one or more conspirators knowingly committed one or more overt acts in furtherance of the object of the conspiracy." *See Rutledge v. Aveda*, No. 2:14-cv-0145-AKK, 2015 WL 2238786, at *12 (N.D. Ala. May 12, 2015) (citing *Corsello*, 428 F.3d at 1014). Because the elements of the cause of action are based on the alleged underlying fraud, the conspiracy claim, like the claims in Count One, must be pleaded with particularity as required by Rule 9(b). Relator's allegations again fall short, and Count Two is due to be dismissed.

### G. Leave to Amend

In her response to the motion to dismiss, Relator requests leave to amend in the event the Court grants all or part of Defendants' motion. Defendants argue that

dismissal of the Second Amended Complaint should be with prejudice as Relator has already amended her complaint multiple times. "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave [to amend] sought should, as the rules require, be 'freely given.'" *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1270 (11th Cir. 2006) (quoting *Foman v. Davis,* 371 U.S. 178, 182 (1962)). Nothing on the record before the Court suggests undue delay, bad faith, or dilatory motive on the part of Relator. Nor that Defendants will be unduly prejudiced if the Court allows Relator one more opportunity to amend the complaint. And while Relator has already amended her complaint twice, she did so without the benefit of an order from the Court. There is no evidence of repeated failure due to previously allowed amendments. Therefore, the Court will allow Relator a final opportunity to amend her complaint. It is therefore

  **ORDERED**:

  1. Defendants' Motion to Dismiss Relator's Second Amended Complaint (Doc. 69) is **GRANTED**.

  2. If she chooses, Relator may file a Third Amended Complaint within fourteen (14) days of the date of this Order, which cures the deficiencies addressed in this Order.

  3. Failure to file an amended complaint within the time permitted will result in the case being dismissed without prejudice and without further notice.

**DONE AND ORDERED** in Tampa, Florida on June 20, 2025.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record
Unrepresented Parties, if any